# Smith v. Huckabee.

*Action at Law against Stockholder of Private Corporation to enforce Liability for Corporate Debts.*

1. *Liability of stockholder for debts of private corporation; how enforced.*—An action at law does not lie against a stockholder of an incorporated company, formed under chap. 3, part 2, title 2, of the Revised Code, to enforce his liability, to the extent of his stock, for debts due by the company at the time of its dissolution,  The remedy is in equity only.

2. *Error; when not ground for reversal.*—Where the nature of the pleadings is such that in no event is the plaintiff entitled to recover, the court will not consider his assignments as to error intervening on the trial.  Error without injury is not ground for reversal.

APPEAL from Circuit Court of Perry.

Tried before Hon. LUTHER R. SMITH.

The appellant Smith brought this action against the appellee Huckabee, to recover of him the amount of a promissory note for $1266.20, due January 1st, 1867, made by the "Choccolocco Cotton Mills."  The complaint avers that the Choccolocco Cotton Mills was a private corporation, organized under the laws of the State of Alabama, under the provisions of part 2, title 2, chapter 3 of the Code, and the several sections thereof; that the defendant was a stockholder and had subscribed ten thousand dollars to the capital stock

[Smith v. Huckabee.]

of said corporation; that afterwards the corporation was dissolved, leaving the amount of said promissory note due and unpaid, whereby and by force of the statute, in such cases made and provided, the defendant became liable to pay plaintiff said sum, which with interest thereon was still due and unpaid.

The complaint also contained a count on account stated. The defendant demurred to the complaint, assigning among other grounds that it did not show that plaintiff had reduced his debt to judgment against the corporation before bringing suit against defendant; secondly, because the plaintiff's remedy, if he has any, is in a court of chancery. This demurrer was overruled.

The defendant then pleaded among other pleas, that the corporation was organized during the late war, while the State was in rebellion against the United States, and had no courts with capacity to organize said corporation; that the entire amount of stock subscribed was to be paid for in Confederate treasury notes, and by agreement among the stockholders was so paid; that said corporation, if ever organized, had never since been dissolved. The court sustained a demurrer to all of these pleas except the last, and the record shows no disposition of a demurrer as to that.

The case was then tried on pleas of *non est factum, nul tiel record* and the plea of the general issue.

On the trial the plaintiff introduced evidence, and excepted to several rulings of the court thereon, which need not be further noticed.

The court having charged the jury that the plaintiff could not recover unless he showed a dissolution of the corporation upon judicial proceedings had for that purpose, and having failed to prove such dissolution could not recover, the plaintiff was forced to take a non-suit and bill of exceptions, with leave, &c.

W. C. WARD, for appellant.—Our statute under which this action is brought, is very much like the New York statute, and is more favorable to the creditor. The New York decisions construing the statute of that State, are persuasive authorities as to the construction of our own. The Alabama decisions that a corporation is not dissolved by *misuser, nonuser*, &c., or by anything short of a judgment, apply to corporations created by a separate organic act; they have no reference to private trading or manufacturing corporations organized under a general statute like ours. In New York, it is held that the continued failure of such a corporation to

[Smith *v.* Huckabee.]

do business, by reason of a want of funds, is such a dissolution that a creditor can maintain suit against a stockholder to enforce his liability for corporate debts. *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wendell, 475; *Penniman* v. *Briggs*,, 8 Cowen, 387; *Slee* v. *Bloom*, 19 Johns, 456, and Chancellor Kent's Commentaries, vol. 2, p. 311. These cases also show the right to an action at law, under the facts stated in the complaint, and the policy of the statute creating the liability will be best promoted by so holding.

BROOKS, HARALSON & ROY, *contra.*—The observations of Kent are based on the decisions cited by appellant. When the questions first came before him, Chancellor Kent held a different doctrine from that announced in *Bloom* v. *Slee*, 19 Johns; but he yielded his views, remarking in his commentaries, that it was "a case not to be carried beyond the precise facts on which it rested." Our own decisions, however, put the matter at rest. A corporation can not be dissolved in any other manner than by a direct legal proceeding instituted for that purpose. 46 Ala. 208; 24 Ala. 398; 16 Ala. 372.

The terms of our statute and that of New York are materially different. Our statute says "*the stockholders are liable,*" &c., the New York statute says, "the stockholders *shall be individually responsible,*" &c. If an action at law is allowable, great injustice may be done the stockholders, and it may be impossible for a court of law to settle their equities between themselves. 10 Metcalf, 525.

BRICKELL, C. J.—Individual liability for corporate debts, as incident to membership of a corporation, arises only from express legislative enactment, either in the charter, or by some general law, to which all similar corporations and their individual members are made subject. *Trustees, &c.,* v. *Flint*, 13 Metc. 539; Ang. & Ames on Cor. § 341–591. Immunity from such liability is one of the inducements which has led to the multiplication of private corporations, and caused them to supersede to a great extent in hazardous enterprises, or enterprises requiring large capital, partnerships, of which individual liability of each partner, whether active, nominal, or dormant, and without regard to the amount of the capital he contributed, is a constituent principle. The advantages of a corporation over a mere partnership—its capacity to sue and be sued by its general name—to contract, binding only the "artificial being, invisible, intangible, and existing only in contemplation of law"—

13

[Smith v. Huckabee.]

its indestructibility by any mere change in its membership—
its capacity to act, within the scope of its powers, as a natural
person, have been the motive and cause of their multiplica-
tion in all commercial communities.   Experience soon
proved that some checks were necessary to prevent improvi-
dent conduct and abuse of these corporate powers, and that
a security to creditors not afforded by the general law, was
indispensable.   There has been, and is a disposition, to fix
on the members of the corporation in certain events, or to a
qualified extent, individual, personal liability for the debts
of the corporation.   At an early day in the history of our
legislation, before and since the organization of the State
government, in the incorporation of banking companies, the
legislature departed from the established law, exempting the
members of such companies from individual liability, and
provided in each charter that for the debts of the company,
the stockholders, at the time of contracting the debt, should
be liable personally in proportion to the number of shares
held by them.   See charter of P. & M. Bank of Huntsville,
passed December 11, 1816; Laws of Ala. 39, § 11; Charter
of Tombeckbee Bank, passed February 13, 1818, Ib, 44, §
5; Charter of Bank of Mobile, passed November 20, 1818,
Ib. 51, § 11; Charter of P. & M. Bank of Mobile, approved
January 8, 1836; Pamph. Acts 1835–6, p. 10, § 11; Char-
ter of Southern Bank of Alabama, approved February 12,
1850; Pamph. Acts 1849–50, p. 125, § 21; Charter of
Northern Bank of Alabama, approved February 10, 1852;
Pamph. Acts 1851–2, p. 116, § 21.   The law authorizing
free banks, or free banking incorporations, provided a mode
for enforcing against the share-holders judgments against the
corporation.   Code of 1852, § 1387.   This section of the
Code was subsequently repealed and a provision inserted,
that the stockholders should be respectively liable for the
debts thereof, in proportion to the stock holden therein.   R.
C., § 1689.   The general law authorizing the creation of
corporations for the construction of rail, turnpike, plank or
macadamised roads, subjects the shareholders to a like liabil-
ity, (Code of 1852, § 1468; R. C., § 1739,) and the general
law authorizing the formation of mining, manufacturing and
other private corporations, contains the provision now to be
construed: "The stockholders of any such corporation are
liable for all debts due by it, at the time of its dissolution,
to the extent of their stock."   R. C., § 1760; Code of 1852,
§ 1478.   These statutory provisions are in accordance with
a well defined legislative policy prevailing in this State, and

cannot be considered as borrowed from the legislation of other States.

The members of a private corporation, not being personally liable for corporate debts, the capital of the corporation was the source of its credit. This capital, as a fund for the payment of corporate debts, embraced all the property, real and personal, of which the corporation has the beneficial ownership. The subscriptions of the several members to its capital stock, or the acquisitions from the use of the capital, were alike liable for the payment of corporate debts. A subscription for stock converts the subscriber into the debtor of the corporation to the amount subscribed, and in the event of the insolvency of the corporation, can in equity be condemned to the satisfaction of creditors. *Allen* v. *M. R. R. Co.*, 11 Ala. 437. In a court of equity, "the stock and other property of private corporations, is deemed a trust fund for the payment of the debts of the corporation; so that the creditors have a lien or right of priority of payment on it, in preference to any of the stockholders in the corporation. Therefore, if a corporation is dissolved, the contracts of such corporation are not thereby deemed extinguished, but they survive the dissolution of the corporation." 2 Story's Eq. 1252; *Wood* v. *Dummer*, 3 Mason, 308; *Mumma* v. *Potomac Co.*, 8 Pet. 281; *Curran* v. *State of Arkansas*, 15 How. 304; *Paschall* v. *Whitsett*, 11 Ala. 472; *Allen* v. *M. R. R. Co.*, *Ib.* 437. When the legislature imposed on the members of the corporation, in the event of its dissolution, a personal liability for corporate debts to the extent of their stock, it was a mere increase of the security for such debts. It was not intended to exempt from or diminish the liability of the fund, which a court of equity regarded as pledged to the payment of corporate debts. To this fund was superadded the personal liability of the members, and whatever should be realized therefrom.

In a court of equity only, was the capital of the corporation treated as a trust fund, and subjected to the payment of corporate debts. If the fund could be reached at law, by legal process against the corporation, the remedy at law was adequate, and equity would not interfere. Then, legal priorities, dependent on legal remedies, would prevail. One creditor might obtain a preference in payment over another. When, however, a resort to equity became necessary, as the court proceeded upon the ground of a trust, attaching to all corporate debts alike, equality was equity, and no legal diligence would entitle one creditor to priority over another.

The personal liability of a stockholder to the extent of his

[Smith *v.* Huckabee.]

stock, created by the statute, is for all the debts of the corporation. It does not depend on or spring out of contract with any or all of the creditors of the corporation, or with the corporation. The statute enjoins upon him as a duty to pay for the satisfaction of all corporate debts a sum equal to the amount of his stock. The duty is owing to all creditors and not to any particular creditor. This being the nature and character of the liability, no single creditor can be permitted to appropriate it to his satisfaction, to the exclusion of other creditors, who are equal in right and equity to him. A remedy to enforce the liability cannot be pursued at law. There is no legal remedy in which all creditors can unite, and in which judgment could be pronounced, awarding to each the exact measure of his rights.

There seems to us insuperable difficulties, not only technical, but founded in equity and good conscience, and in the spirit and policy of the statute creating this personal liability, to the maintenance of an action at law for its enforcement. The liability is single, distinct in amount—can it be split up into as many several causes of action as there may be creditors? That an entire or single cause of action may not be divided or split into several, is an elementary principle. The liability arises only on the dissolution of the corporation. Until the dissolution it is contingent. That is the event rendering it capable of enforcement. On that event it accrues *for the debts of the corporation,* limited to the extent of the stock. If a suit is maintainable, which creditor shall be entitled to priority, he who first commences suit, or he who, by superior diligence, first obtains judgment? Can the stockholder after a dissolution of the corporation, when its credit is impaired, avail himself of its condition, to pay such creditors as he may choose to prefer, and thereby absolve himself from a liability due alike to all creditors? If he is liable to a suit at law, at the instance of any corporate creditor, how can this right be denied him? Can he speculate in the debts of the dissolved corporation, and avail himself of such debts as he may purchase as a set-off to his liability? To what extent can the set-off be allowed—for the nominal value of the debts, or the sum he paid for them? Suppose the corporation really indebted to him at its dissolution, can he set-off such debt, against the action of a creditor, pursuing a right not derived from the corporation, and which the corporation never had capacity to enforce, because it was not due to it? The statutory liability is an additional security for the corporate debts, springing up on the dissolution of a corporation, to which the legislature intended the

Vol. LIII.

principle, that equality is equity, should be applied. Any creditor of the corporation suing for himself and on behalf of all other creditors, can in equity enforce it. In such suit all rights and equities can be fully adjusted, and every creditor receive satisfaction of his debt to the extent to which he is entitled. A court of law is incapable of this adjustment, and therefore the remedy is in equity only.

We are aware of the decision in *Ibbotson* v. *Bank of Poughkeepsie*, 24 Wend., 479. We have examined and considered it, and though it is founded on a statute not materially differing from ours, we cannot follow it. It thwarts the spirit and policy of the statute, and is inconsistent with well defined legal principles. It seems to have led to a change in the legislation of New York. *Walker* v. *Crain*, 17 Barb. 119. It is inconsistent with the decisions in Massachusetts, and these decisions seem to us supported by the better reasoning. *Baker* v. *Atlas Bank*, 9 Metc. 182; *Harris* v. *Dorchester*, 23 Pick. 112; *Crass* v. *Babcock*, 10 Metc. 525; *Spear* v. *Grant*, 16 Mass. 9.

If the charge given by the court was erroneous, which we will not now consider, it was error without injury, as in no event was the plaintiff's action maintainable.

The judgment must, therefore, be affirmed.